JAMES C. FARGO et al., as Executors of WILLIAM G. FARGO, Deceased, Respondents, *v.* HERBERT G. SQUIERS et al., as Executors of GEORGIA FARGO, Deceased, et al., Appellants, and MARY C. FARGO and ANNA E. FARGO, Respondents.

1. WILL — POWER OF APPOINTMENT — SUSPENSION OF OWNERSHIP. In applying the statutory rule as to the suspension of the absolute ownership of personal property (1 R. S. 773, § 1), the provisions of a will which attempt to execute a power of appointment conferred by will must be tested by reading them into the will which created the power.

2. ATTEMPTED EXECUTION OF POWER OF APPOINTMENT — UNLAWFUL SUSPENSION OF OWNERSHIP. An attempt, by a will which undertakes to execute a power of appointment conferred by will, to postpone the absolute ownership of personal property covered by the power of appointment, by lives which were not in being at the death of the maker of the will which created the power, violates the statute.

3. TRUST — NON-VESTING OF OWNERSHIP. A trust is created and the ownership of the property is not vested in the beneficiaries as of the date of the death of the maker of the will, but is suspended, where a will gives the property to the executors in trust, to care for and manage it, with extraordinary powers of sale and investment, not only during the infancy of certain beneficiaries, but until they attain a specified age beyond majority, and there is an uncertainty as to the persons who may ultimately take in possession.

4. APPLICATION OF TESTAMENTARY FUNDS, AS BETWEEN SPECIFIC LEGACIES AND RESIDUARY TRUST — EQUITY. When the subject-matter of a will which creates a trust consists of two estates or funds, one of which is an individual estate which can be lawfully devoted to the purposes of the trust and the other is an appointive estate which cannot be so devoted, and the will contains specific legacies with no direction as to the fund out of which they shall be paid and discloses an intention to devote the whole of the residuary estate to the use of the beneficiaries of the trust, equity can, for the purpose of carrying out such intention so far as lawful, require the specific bequests to be paid out of the appointive estate and thus save the individual estate unimpaired to constitute the trust.

*Fargo* v. *Squiers*, 6 App. Div. 485, modified.

(Argued October 21, 1897; decided November 23, 1897.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July

21, 1896, which affirmed a judgment entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John G. Milburn* for executors of Georgia Fargo, deceased, appellants. Assuming that Georgia Fargo, by her will, attempted to create trusts in favor of the Squiers children, and that such trusts are void by reason of suspending the power of alienation during lives not in being at the death of William G. Fargo, then such trusts are to be expunged from the will, leaving open only the question whether intestacy followed, or whether the bequests can be sustained as vested in the legatees. (*Smith* v. *Edwards*, 88 N. Y. 92, 102; *Greene* v. *Greene*, 125 N. Y. 512; *Woodgate* v. *Fleet*, 64 N. Y. 570; *Townshend* v. *Frommer*, 125 N. Y. 446; *Everitt* v. *Everitt*, 29 N. Y. 39; *Manice* v. *Manice*, 43 N. Y. 303; *Locke* v. *F. L. & T. Co.*, 140 N. Y. 135.) The bequests in favor of the Squiers children, expunging the trusts, vested in them at the death of the testatrix. (*Moore* v. *Littel*, 41 N. Y. 66; *Radley* v. *Kuhn*, 97 N. Y. 35; *Armytage* v. *Williamson*, L. R. [3 App. Cas.] 335; *Tucker* v. *Bishop*, 16 N. Y. 102; *Warner* v. *Durant*, 76 N. Y. 133; *Vanderpoel* v. *Loew*, 112 N. Y. 167; *Robert* v. *Corning*, 89 N. Y. 225; *Patterson* v. *Ellis*, 11 Wend. 260; *Kane* v. *Gott*, 24 Wend. 641; *Goebel* v. *Wolf*, 113 N. Y. 405; *Bliven* v. *Seymour*, 88 N. Y. 469.) The limitations over in the event of any of the children dying under thirty years of age being void, the general rule applies that where the effect of such a limitation over is to abridge or defeat the prior estate, the result of such contingent limitation being held void for remoteness is that the person whose estate would be defeasible if such contingent limitation were valid takes the estate discharged of the condition or limitation over. (*Manice* v. *Manice*, 43 N. Y. 303, 383; *Everitt* v. *Everitt*, 29 N. Y. 39; *Robert* v. *Corning*, 89 N. Y. 225; *Radley* v. *Kuhn*, 97 N. Y. 36; *Oxley* v. *Lane*, 35

N. Y. 340; *Harrison* v. *Harrison*, 36 N. Y. 543; *Tiers* v. *Tiers*, 98 N. Y. 568; *Henderson* v. *Henderson*, 113 N. Y. 1; 2 Sugden on Powers, 85; *Warner* v. *Howell*, 3 Wash. C. C. 12; *Fry* v. *Kappen*, Kay, 163.) The judgment should be reversed and the will of Georgia Fargo sustained as a valid execution of the power of appointment with which she was invested. (*Tiers* v. *Tiers*, 98 N. Y. 573; *Radley* v. *Kuhn*, 97 N. Y. 35; *Moore* v. *Littel*, 41 N. Y. 66.) If it be held that the 13th article of Georgia Fargo's will is valid only as to her individual estate, we submit that the legacies and expenses of administration should be paid out of the property which she had the power to appoint, either in whole or *pro rata*. (2 Jarman on Wills [5th ed.], 626, 687, 688; *Roberts* v. *Walker*, 1 R. & M. 752; *Bench* v. *Miles*, 4 Madd. 187.)

*William D. Guthrie*, guardian *ad litem*, for Squiers infants, appellants. The legacies to the Squiers children vested at the time of the death of Georgia Fargo, and the postponement of the period of actual payment does not constitute any unlawful suspension of the absolute ownership of personal property. (*Vanderpoel* v. *Loew*, 112 N. Y. 167; *Radley* v. *Kuhn*, 97 N. Y. 26; *Everitt* v. *Everitt*, 29 N. Y. 39; *Manice* v. *Manice*, 43 N. Y. 303; *Warner* v. *Durant*, 76 N. Y. 133; *Smith* v. *Edwards*, 88 N. Y. 92; *Bliven* v. *Seymour*, 88 N. Y. 469; *Bushnell* v. *Carpenter*, 92 N. Y. 270; *Shannon* v. *Pentz*, 1 App. Div. 331; *Goebel* v. *Wolf*, 113 N. Y. 405; *Miller* v. *Gilbert*, 144 N. Y. 68.) The primary purpose of the will of Georgia Fargo was to bequeath the principal to the Squiers infants. That intention is not defeated by any illegal direction for accumulations or by void limitations over in case of death without issue and without exercising the right to dispose of the estate by deed or will. (*Beardsley* v. *Hotchkiss*, 96 N. Y. 201; 1 R. S. 726, § 40; *Cochrane* v. *Schell*, 140 N. Y. 516; *Williams* v. *Williams*, 8 N. Y. 525; *Deegan* v. *Wade*, 144 N. Y. 573; *Manice* v. *Manice*, 43 N. Y. 303; *Radley* v. *Kuhn*, 97 N. Y. 26;

*Tiers* v. *Tiers,* 98 N. Y. 568; *Van Horne* v. *Campbell,* 100
N. Y. 287.) In any respect the will before the court does
not offend the rule against perpetuities, and the effect of its
provisions is not to suspend the absolute ownership of per-
sonal property. (*Manice* v. *Manice,* 43 N. Y. 303; *Cutting*
v. *Cutting,* 86 N. Y. 522; *Cochrane* v. *Schell,* 140 N. Y. 516;
2 Lewin on Trusts, 689, 692, 693; Williams on Ex. 1398;
*Saunders* v. *Vautier,* 4 Beav. 115; *Greet* v. *Greet,* 5 Beav.
123; *Harrison* v. *Grimwood,* 12 Beav. 192; *Jackson* v.
*Majoribanks,* 12 Sim. 93; *Milroy* v. *Milroy,* 14 Sim. 48;
*Farmer* v. *Francis,* 2 Bing. 151.) If the provisions of the
article of the Revised Statutes on uses and trusts are to be
extended to personal property, there is no such suspension of
ownership as to violate the rule of perpetuities. (*Radley* v.
*Kuhn,* 97 N. Y. 26; *Sawyer* v. *Cubby,* 146 N. Y. 192; *Gil-
man* v. *Reddington,* 24 N. Y. 9; 1 R. S. 725, 730, §§ 35, 63;
*Hawley* v. *James,* 16 Wend. 61.) The declared intention of
the testatrix to execute the power of appointment should be
effectuated. (*Hume* v. *Randall,* 141 N. Y. 499; *Crooke* v.
*County of Kings,* 97 N. Y. 421; *Townshend* v. *Frommer,*
125 N. Y. 446; *In re Miner,* 146 N. Y. 121; 1 R. S. 737,
§ 123; *Hillen* v. *Iselin,* 144 N. Y. 365.)

*Lewis Cass Ledyard* for executors of William G. Fargo,
deceased, respondents. No valid exercise of the power of
appointment was effected by Georgia Fargo's will, for the
reason that her attempt to exercise it was an attempt to sus-
pend the absolute ownership of the property beyond the
period limited by law. (1 R. S. 723, § 14; 729, § 60; 730,
§§ 63, 65; 737, §§ 128, 129; 773, § 1; *Graff* v. *Bonnett,* 31
N. Y. 9; *Manice* v. *Manice,* 43 N. Y. 303.) The will of
William G. Fargo effected an equitable conversion of his prop-
erty from real into personal estate, as he directed that it should
be sold and converted into money. For the purposes of this
case, therefore, the property should be regarded as personal
property. (*Kane* v. *Gott,* 24 Wend. 659; *Moncrief* v. *Ross,*
50 N. Y. 431; *Power* v. *Cassidy,* 79 N. Y. 602; *Robert* v.

*Corning,* 89 N. Y. 225 ; *Genet* v. *Hunt,* 113 N. Y. 158 ; *Dana* v. *Murray,* 122 N. Y. 604 ; *Salmon* v. *Stuyvesant,* 16 Wend. 324 ; *Maitland* v. *Baldwin,* 70 Hun, 267 ; *Hillen* v. *Iselin,* 67 Hun, 444 ; 144 N. Y. 365 ; 1 Jarman on Wills [R. & T. ed.], 561 ; *Knox* v. *Jones,* 47 N. Y. 389.) The will of Georgia Fargo created a formal and technical trust which, apart from the rule against perpetuities, was entirely valid. It is this trust which suspends absolute ownership. It cannot, however, be disregarded or be cut out of her will and leave anything whatever to take effect. (1 R. S. 729, §§ 58, 60.) The circumstance that the trust in Georgia Fargo's will offends against the rule which prohibits the suspension of the absolute ownership, can have no legitimate place in any discussion which has for its purpose the construction of her will or the ascertainment of her intention. (Gray on Perpetuities, § 629 ; *Dungannon* v. *Smith,* 12 Cl. & Fin. 559 ; *Van Nostrand* v. *Moore,* 52 N. Y. 18 ; *Cottman* v. *Grace,* 112 N. Y. 309.) The argument advanced in support of Georgia Fargo's will proceeds upon a total misapprehension of the cases in which invalid provisions are allowed to be cut off or disregarded, in order that effect may be given to valid provisions in the same will. The cases, and we believe the only cases, in which this is ever done are those in which both valid and invalid provisions are contained in the same will, and they are so far separable and distinct that the invalid provisions may be eliminated, and the valid provisions enforced without doing violence to the general scheme or principal purpose of the testator. (*Jennings* v. *Jennings,* 7 N. Y. 547 ; *Haynes* v. *Sherman,* 117 N. Y. 433 ; *Knox* v. *Jones,* 47 N. Y. 389 ; *Maitland* v. *Baldwin,* 70 Hun, 267 ; *Cowen* v. *Rinaldo,* 82 Hun, 486.) The argument of the appellants that if we assume that a trust was created by Georgia Fargo's will, and that this trust was void as suspending the absolute ownership during lives not in being at the death of William G. Fargo, still the result of this invalidity is not necessarily intestacy is untenable. (1 R. S. 723, §§ 14, 15 ; *Post* v. *Hover,* 33 N. Y. 593 ; *Tucker* v. *Tucker,* 5 N. Y. 408 ; *Benedict* v. *Webb,* 98 N. Y. 460 ;

*Haynes* v. *Sherman*, 117 N. Y. 433.) If there had been no
trust created by the will it would not avail the appellants for
the interest given to the Squiers children was not a vested,
but a contingent one. (*Cochrane* v. *Schell*, 140 N. Y. 516.)

*Edward E. Tanner* for Anna E. Fargo et al., respondents.
The trust, created in the will of Georgia Fargo is absolutely
void, as it suspends the absolute ownership during the lives of
the Squiers children, who were not in being at the time of the
death of Mr. Fargo. (1 R. S. 772, § 13; 773, §§ 1, 2, 3;
*Smith* v. *Edwards*, 88 N. Y. 92.) The Squiers children take
only a contingent interest, or a contingent remainder, the
whole title, legal and equitable, vesting in the trustees. (*Amery*
v. *Lord*, 9 N. Y. 403; *Knox* v. *Jones*, 47 N. Y. 390; *Smith*
v. *Edwards*, 88 N. Y. 92; *Talmadge* v. *Seaman*, 85 Hun,
245; *Sweet* v. *Chase*, 2 N. Y. 80; *Vawdry* v. *Geddes*, 1 R.
& M. 203; *Norris* v. *Beyea*, 13 N. Y. 273.) The trust can-
not be expunged so as to vest an immediate estate in the
Squiers children, when none was intended. (*Genet* v. *Hunt*,
113 N. Y. 158; *Dana* v. *Murray*, 122 N. Y. 604; *Green-
land* v. *Waddell*, 116 N. Y. 240; *Harris* v. *Clark*, 7 N. Y.
242; *Adams* v. *Perry*, 43 N. Y. 488; *Norris* v. *Beyea*, 13
N. Y. 273; *Greyston* v. *Clark*, 41 Hun, 125; *Nathan* v.
*Hendricks*, 87 Hun, 483; *Cowen* v. *Rinaldo*, 82 Hun, 480;
*Johnson* v. *Brasington*, 86 Hun, 109; *Cottman* v. *Grace*, 112
N. Y. 308.) The consequence of the invalidity of the trust
created is the same as if Georgia Fargo had died intestate.
(*Tiers* v. *Tiers*, 98 N. Y. 568; *Henderson* v. *Henderson*, 113
N. Y. 1, 16; *Robert* v. *Corning*, 89 N. Y. 225; *Van Schuyver*
v. *Mulford*, 59 N. Y. 426; *Everitt* v. *Everitt*, 29 N. Y. 78;
*Greenland* v. *Waddell*, 116 N. Y. 240; *Dana* v. *Murray*,
122 N. Y. 604; *Cottman* v. *Grace*, 112 N. Y. 308; *Harris* v.
*Clark*, 7 N. Y. 242; *Norris* v. *Beyea*, 13 N. Y. 273; *Adams*
v. *Perry*, 43 N. Y. 488; *Genet* v. *Hunt*, 113 N. Y. 158.)

HAIGHT, J.   This action was brought by the plaintiffs, as
executors and trustees under the will of William G. Fargo, to

obtain a construction of the will of Georgia Fargo, who attempted to exercise the power of appointment given her under the will of William G. Fargo.

William G. Fargo, a resident of the city of Buffalo, died on the 3d day of August, 1881, leaving a last will and testament, in which he disposes of the residue and remainder of his estate, after making specific bequests, by giving it to his executors in trust, to convert into money and to invest, with directions to divide into three equal parts, one of which parts was to be held by his executors for the benefit of his daughter Georgia during life, another part for his daughter Helen Lacy, and the remaining third for his granddaughters, Anna E. Fargo and Mary C. Fargo, the daughters of his deceased son. With reference to the estate given to his executors as trustees for his daughter Georgia, he provides that, " upon the death of my said daughter, the principal sum so held in trust for her, under this provision of my last will and testament, shall be paid and distributed by my executors, as she shall by her last will and testament direct; but if my said daughter shall die intestate, then if she leave issue her surviving, the said principal sum shall be at once distributed to such issue. If my said daughter shall die intestate, leaving no issue her surviving, then my executors shall distribute, except as hereinafter provided, the said principal sum to my heirs at law then living, each taking the share therein they would have taken had the same been real estate in the state of New York, of which I had died seized intestate and survivor of my wife, and had my death been immediately subsequent to the death of my said daughter." His daughter died on the 10th day of September, 1892, without issue, but leaving a last will and testament, in which she first declared her intention to dispose of all of her estate to which she was in any manner entitled, and to direct the payment and distribution by the executors of the will of her father, of the sum held in trust for her under the provisions of the will, in execution of the power of appointment vested in her thereby. She makes specific bequests, amounting to about the sum of fifty thousand dol-

lars; and then, by the thirteenth clause of her will, provides: "All the rest and residue of my estate of every kind and nature whatsoever, including that of which I have the power of appointment under the will of my father and any legacy which may lapse or fail, I give and bequeath to my executors in trust, however, for the following purposes: To divide the same into four equal parts and to hold one of said parts for the use and benefit of Gladys Fargo Squiers; another of said parts for the use and benefit of William George Fargo Squiers; another of said parts for the use and benefit of Georgia Fargo Squiers; and another of said parts for the use and benefit of Helen Fargo Squiers, in trust, to accumulate the income, issues, rents and profits derived from each such share until the beneficiary shall have attained the age of twenty-one years, or in case of his or her death prior to attaining such majority, until such death; such accumulation to belong absolutely to each beneficiary and to be paid over to the beneficiary on his or her attaining his or her majority, or to his or her estate in case of his or her death prior to attaining such majority, free from any trust whatsoever. After the beneficiary has attained the age of twenty-one, and until he or she attains the age of twenty-five, the said shares to be held in trust, the rents, issues and profits to be paid over annually to such beneficiary, and on his or her attaining the age of twenty-five, one-half of such share to be paid over to him or her absolutely. After he or she attains the age of twenty-five, and until he or she attains the age of thirty, the rents, issues and profits of the remaining one-half to be paid over to such beneficiary, annually, and on his or her attaining the age of thirty years, the said remaining half to be paid over to him or her absolutely."

Other provisions follow in which it is provided that, in case of the death of the beneficiaries before arriving at the age of thirty years, the fund should be paid to their issue, if any; if there be no issue, then to the persons appointed by their wills, if any. If there be no issue and no appointees, then to the brothers and sisters of the beneficiaries, if any, and if

there be no issue, appointees, brothers or sisters, then to Anna E. and Mary C. Fargo, the granddaughters of William G. Fargo.

The beneficiaries named are the children of Helen Lacy Squiers, all of whom were born after the decease of William G. Fargo.

The trust estate created by the will of William G. Fargo was, by the express provisions of the will, converted into personal property; and the courts below have held, with reference to the bequest to the Squiers children under the will of Georgia Fargo, that a trust was created suspending the absolute ownership of one-half of the property until such children should become twenty-five years of age, and the other half until they should become thirty years of age respectively; that this was a violation of the statute, which provides that " the absolute ownership of personal property shall not be suspended by any limitation or condition whatever, for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitation or condition; or if such instrument be a will, for not more than two lives in being at the death of the testator." (1 R. S. 773, section 1.) Such, undoubtedly, is the effect of the provision, if a trust were created, in so far as it relates to the trust estate created by the will of the testatrix's father, of which she had the power of appointment. The statute further provides that in all other respects (referring to the section above quoted) limitations of future or contingent interests in personal property shall be subject to the rules prescribed in relation to future estates in lands. (1 R. S. 773, section 2.)

In the case of *Mills* v. *Husson* (140 N. Y. 99–104) it was held that the rules governing estates or interests in lands are, so far as practicable, applied to estates or interests of a like character in personal property.

With reference to lands it is provided that " the period during which the absolute right of alienation may be suspended, by any instrument in execution of a power, shall be computed,

not from the date of such instrument, but from the time of the creation of the power. No estate or interest can be given or limited to any person, by an instrument in execution of a power, which such person would not have been capable of taking, under the instrument by which the power was granted." (1 R. S. 737, sections 128, 129. See, also, *Genet* v. *Hunt*, 113 N. Y. 158; *Hillen* v. *Iselin*, 144 N. Y. 365; *Everitt* v. *Everitt*, 29 N. Y. 39, 78; *Dana* v. *Murray*, 122 N. Y. 604–616.)

The validity of the provisions of the will of Georgia Fargo, in so far as she attempted to execute the power of appointment, must, therefore, be tested by reading the provisions of her will into the provisions of the will of William G. Fargo, which created the power. So tested, we find that the Squiers children, not being in existence at the time of the death of William G. Fargo, any attempt to postpone the absolute ownership of the property in these children would be a violation of the provisions of the statute.

It is contended, however, that no trust was created by the will of Georgia Fargo, and that the Squiers children were vested with the ownership of the property as of the date of her death. We recognize fully the principle that trusts are not necessary for the care of the property of infants during their minority; but in this case we have something more; the will in express terms gives and bequeaths to the executors in trust. By the eighteenth clause of the will she authorizes and empowers her executors " to take possession of all my real estate which is devised by this, my last will, and which is included in the estate to be paid and distributed by the exercise of the power of appointment vested in me by the seventh clause of my father's will, and to collect and receive the rents and profits thereof, and to sell and dispose of all or any part thereof, at such time or times, and in such manner as to them, in their discretion, may seem expedient and proper, and to execute and deliver deeds to the purchasers, and also to convert or collect any personal estate, and to invest and keep invested the proceeds of my real and personal estate in such manner as

to them may seem most judicious, without reference to any legal restrictions which may exist as to the nature of the investment of trust funds to be made by executors and trustees under the laws of this state, and to collect and receive the income thereof."

The will not only provides for the care of the fund and estate during the minority of the infants, but continues such care one-half until they become twenty-five years of age, and the other half until they become thirty years of age, respectively. Here we have express provisions creating a trust, providing for its management, empowering the trustees to convey real estate, and giving them extraordinary powers with reference to the investments, independent of the statute. No case to which our attention has been called by the appellants' counsel meets the provisions contained in this will. To hold that no trust was created, would, in effect, overrule many well-considered cases upon the subject and make it difficult, if not impossible, to draft a provision in a will which would constitute a valid trust.

We are aware that the law favors the vesting of estates, and where there is nothing in the will showing a different intention, the courts are inclined to construe wills as vesting the estate as of the date of the death of the testator. But this can only be done where there is no contingent remainder or uncertainty as to the person or persons entitled to take. In this case the provisions of the will leave the persons who may ultimately take in possession quite uncertain. Upon the happening of certain contingencies, the grandchildren, Anna E. and Mary C., may ultimately be entitled to the possession of the whole estate. This fact alone prevents the vesting of the absolute ownership in the Squiers children until such time as they may become entitled to take in possession. This branch of the case has been fully considered in the opinion written by the Appellate Division, in which we fully concur, and do not, therefore, deem it necessary to further prolong the discussion upon this subject.

It appears from the record before us that, at the time of

her decease, Georgia Fargo had an individual estate valued at
the sum of eighty thousand dollars.    By her will she announces
her intention to dispose of her individual estate, as well as
that of which she had the · power of appointment.    She then
makes specific bequests, amounting, as we have shown, to
about fifty thousand dollars, without specifying whether the
payments should be made out of her individual estate, or that
of which she had the power of appointment.    The power of
appointment given by her father's will was general and with-
out limitation.    She had the power to require that each of
her specific bequests should be paid out of the trust fund.
She then, by the thirteenth clause of her will, creates a trust in
favor of the Squiers children, to which we have already
alluded, in which she bequeaths all the rest and residue of her
individual estate, including the estate of which she had the
power of appointment.    The words "rest and residue" may
apply to the estate of which she had the power of appoint-
ment, as well as to her individual estate ; and if these specific
bequests made by her exceed her individual estate there could
be no question but that they would be payable out of the trust
estate created by her father.    The trust created by her in this
clause of her will is, as we have shown, invalid so far as it was
made up out of the estate of which she had the power of appoint-
ment, but was perfectly valid in so far as it was made out of her
individual estate.    We thus have this situation presented : A will
in which a trust is created for the benefit of infant children ;
an estate in which there are two funds, one of which can law-
fully be devoted to the purposes of the trust and the other
not, and specific legacies in regard to which there has been
no direction as to the fund out of which they should be paid.
There is no question respecting her intention.    She intended
the whole of her residuary estate, including that of which she
had the power of appointment, to be held for the use of the
Squiers children.    In so far as her will is in violation of the
statute her intention cannot be carried out, but a court of
equity, in the exercise of its discretion, has the power to carry
out the intention of the testatrix, as disclosed by her will, so

far as it is not violative of the provisions of the statute. It cannot devote the trust estate created by the will of William G. Fargo to the making up of the trust created by the will of Georgia Fargo; but it can, for the purpose of carrying out her wishes and intention, require the specific bequests to be paid out of the estate of which she had the power of appointment, thus saving her individual estate unimpaired to constitute the trust provided for by her will. Ordinarily, perhaps, the individual estate would first be exhausted in payment of the specific bequests; but in this case to so pay the specific bequests would not only defeat the main object and purposes of the will, but the intention of the testatrix. The situation is not an uncommon one in principle; it is analogous to the marshaling of the estates of a deceased person. The rule is that the personal estate must be first exhausted in the payment of the debts to the relief of the real estate; but courts of equity will not enforce this rule where it is in apparent hostility to the purpose and intent of the will, and will defeat the bequests made therein. The equitable rule is that where one claimant has two funds to which he may resort to answer his demand, and another claimant has an interest in only one of such funds, he can compel the former to take satisfaction out of the fund in which the latter has no lien, and this rule is applicable to legatees as well as creditors. (*Rice* v. *Harbeson,* 63 N. Y. 493; *Gainsford* v. *Dunn,* L. R. [17 Equity Cases] 405; *Wilday* v. *Barnett,* L. R. [6 Equity Cases] 193; *Wollaston* v. *King,* L. R. [8 Equity Cases] 165.)

The judgment should be modified so as to direct the payment of the specific legacies under the will of Georgia Fargo out of the residuary estate of William G. Fargo, held in trust for Georgia Fargo, before distribution, and as so modified affirmed, with costs to all parties payable out of the individual estate of Georgia Fargo.

All concur, except VANN, J., not voting.

Judgment accordingly.