A woman deposited certain money with a trust company, to be held for her own benefit, with a provision that the trust could be revoked by either party thereto after six months, the fund to be payable to herself after revocation, with a stipulation that, if she died during the trust, the fund should be disposed of according to her last will. She died two years later, without having revoked the trust, and gave her residuary estate to her executor in trust, the income to be paid to her daughter for life, and thereafter to her grandchildren, when the youngest of them had reached majority, at which time, if the daughter had died, the residuary estate was to be divided among them. *Held* that, under the agreement, the remainder in trust had been absolutely reserved, and that title to such remainder passed by the will to her executor, as property of the decedent, to be held as trustee for at least the period of the life of the daughter.

Proceedings upon the judicial settlement of the account of the Brooklyn Trust Company as executor of Hannah Toner, deceased. Objections overruled.

Bergen & Dykman, for executor.
Jones & Titcomb, for petitioner.
Thomas H. Troy, special guardian.

ABBOTT, S. On January 4, 1897, Hannah Toner entered into an agreement with the Brooklyn Trust Company, whereby she agreed to deposit with the Brooklyn Trust Company the sum of $6,000, to be held in trust by the party of the second part (the Brooklyn Trust Company) for the sole use and benefit of Mrs. Toner. The said trust company agreed to invest the said sum in securities specified, and pay to Mrs. Toner, on the 1st days of May and November in each year, the net income from said investments. If Mrs. Toner should die during the continuance of the trust, the trust estate and all accumulations "shall be disposed of according to the last will and testament of" Mrs. Toner. The Brooklyn Trust Company agreed to accept the trust, and "at the termination of the trust to pay over to the party of the first part [Mrs. Toner] the sum held in trust by it and all accumulation of interest thereof." "The trust estate hereby created shall continue for a period of six months from this date, after which time it shall be revocable by either party." The $6,000 referred to in the agreement was paid to the Brooklyn Trust Company, and afterwards, on March

5, 1898, a further sum of $4,000, "to be held in accordance with the provisions of the trust agreement." The Brooklyn Trust Company retained this fund of $10,000, under the terms of the trust agreement, until after the death of Mrs. Toner, which occurred on April 18, 1899, after which date the fund was paid by the trust company to the executor of her will. The will was admitted to probate, and letters testamentary issued to the Brooklyn Trust Company as such executor. The entire estate consisted of personal property. The testatrix bequeathed her residuary estate unto her executor, in trust to invest the same, and pay the interest and income therefrom to her daughter Augusta M. Smith during the term of her natural life. After the death of her daughter, she directed her executor and trustee to pay the said interest and income to her grandchildren Augusta L. Smith, Florence Smith, and Susanna Estelle Smith, for their support and maintenance "until the youngest survivor thereof shall arrive at the age of twenty-one years, in the following proportions, viz.: One part thereof to Augusta L. Smith, two parts thereof to Florence Smith, and one part thereof to Susanna Estelle Smith.   *   *   * When the youngest survivor of my said grandchildren shall arrive at the age of twenty-one years, if after the death of my said daughter Augusta M. Smith, then I direct my said executor and trustee to distribute among and pay to my said grandchildren all of my said property, in the following proportions, namely,"—specifying the proportions above set forth. In case the "youngest survivor of my said grandchildren" should be of the age of 21 years or more at the death of testator's daughter, she directed her executor and trustee to distribute and pay over to her grandchildren all of her said property, in the proportions named. In case any of her grandchildren should die before "becoming vested with or entitled to any of my property under this will, then the share to which she would have been entitled shall go to the survivor or survivors in the same relative proportions as stated in the preceding paragraph of this will." The will then contains a provision over in the event of the decease of all the testator's grandchildren "before the youngest survivor of them shall arrive at the age of twenty-one years." The codicil of the will has no bearing upon the questions under consideration.

While it is true that the Brooklyn Trust Company was vested with the title to the trust fund, it was only vested with such title as was necessary for the purposes of the trusts established by the trust agreement. The term of such trust agreement was to be: (1) For a period of six months from the date of the agreement, January 4, 1897. (2) For a further period of time dependent upon the joint will of the parties to the agreement, and revocable at any time by either party. (3) If Mrs. Toner should die during the continuance of the trust, "the trust estate and all accumulations shall be disposed of according to the last will and testament of the party of the first part." (4) At the termination of the trust, if terminated by revocation, the trust company was "to pay over to the party of the first part the sum held in trust by it, and all accumulations of interest thereof."

The extreme period of time during which the trust was to continue was during the life of the creator of the trust. At any time during

her life after July 4, 1897, the trust was revocable; but if it contin-
ued during the extreme period specified in the trust instrument, i. e.
during the life of Mrs. Toner, then, upon the termination of the trust
by the death of Mrs. Toner, the trust estate and all accumulations
were to be "disposed of according to the last will and testament of
the party of the first part." Suppose this provision had been entirely
omitted from the trust instrument; there can be no doubt whatever
that the remainder in the trust estate, after the termination of the trust
period fixed by the agreement, would have remained vested in the
testatrix, and would unquestionably have passed, under her last will
and testament, as a part of the property and estate owned by her
in her own right. In such case, the estate of the trustee would have
terminated with the life of the testatrix, and the trustee would have
had no title or interest whatever in the remainder. The title to the
remainder, not having been disposed of by the trust agreement, would
have remained vested in the creator of the trust, Mrs. Toner.

The natural and reasonable construction of the words, "the trust
estate and all accumulations shall be disposed of according to the
last will and testament of the party of the first part," is that they
were a mere declaration of the reservation by Mrs. Toner of the own-
ership of the remainder of the fund upon the termination of the trust
by her death. This language was not intended to and did not vest
Mrs. Toner with a mere power of appointment of a trust fund by her
last will and testament. In re Ogsbury, 7 App. Div. 71, 39 N. Y.
Supp. 978. But, even so, it is unquestionably the fact that the will of
Mrs. Toner would have operated, so far as its mere form is con-
cerned, as an appointment which would satisfy the provisions of the
trust agreement. Trust Co. v. Livingston, 133 N. Y. 125, 30 N. E.
724.

It is contended in behalf of the contestant, however, that, if the
trust fund passed by virtue of an appointment under the powers con-
tained in the trust agreement, the title to this fund was acquired, not
by virtue of the provisions of the will, but by virtue of the provisions
of the trust agreement, and that the disposition so made violates the
provisions of the statute against the suspension of absolute owner-
ship of personal property beyond two lives in being at the time of the
creation of the trust. Even assuming this contention to be sound,
and that the creator of the $10,000 trust has attempted to suspend
the absolute ownership of this fund beyond the statutory period, viz.
her own life, the life of her daughter, Augusta M. Smith, and the life
or lives, according to the construction which may be given to the
subsequent clauses of the will, of the testator's three grandchildren,
still I am of the opinion that the provisions of the will in relation to
the successive estates are not so closely connected and allied, or so
dependent the one upon the other, as to invalidate the two life es-
tates first created, viz. those of the testator herself and her daughter
Augusta M. Smith. To this extent, at least, the provisions of the
will are valid, and due force should be given to them in any event.
Maitland v. Baldwin, 70 Hun, 267, 24 N. Y. Supp. 29; Henderson v.
Henderson, 113 N. Y. 1–15, 20 N. E. 814; Tiers v. Tiers, 98 N. Y.
568. One intention of the testator is perfectly clear, that her daugh-

ter should have the income of her estate during life, and nothing more. To so much of the will effect may be lawfully given.

It follows that, for the purposes of the issue now before me, it is immaterial what construction shall be ultimately given, either to the trust agreement or to the provisions of the will, so far as concerns the remainder contingent upon the decease of Augusta M. Smith. Until the termination of her life, the title to the entire residuary estate, including the $10,000 trust fund, is vested in the trustee for the purposes specified in the will. It will be quite soon enough to determine the individuals who shall be entitled to the remainder on the death of Mrs. Smith when that event occurs. It is unnecessary to determine that question at this time. I am therefore of the opinion that the objections filed should be overruled, and a decree made directing the payment of the entire residuary estate to the Brooklyn Trust Company as trustee during the life of Augusta M. Smith. Let decree be presented accordingly on two days' notice.

Decreed accordingly.